IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TENNESSEE GAS PIPELINE CO. | : | |
| Plaintiff | : | |
| | : | |
| VS. | : | 3:CV-05-2328 |
| | : | (JUDGE VANASKIE) |
| DOMINIC BRADLEE, MILFORD | : | |
| ARCADIA, LP, MILFORD ARCADIA | : | |
| GROUP, LTD | : | |
| Defendants | : | |
| | : | |

MEMORANDUM

Plaintiff, Tennessee Gas Pipeline Company ("TGP"), brought this action against

Defendants, Dominic Bradlee, Milford Arcadia, LP, and Milford Arcadia Group, LTD

(collectively "Defendants"), asserting two claims arising out of an alleged trespass to

Plaintiff's right-of-way.  Currently before this Court is Defendant's Motion for Summary

Judgment. (Dkt. Entry 57.)  For the reasons that follow, the Motion for Summary Judgment

will be denied.

I.      BACKGROUND

        A. Factual Background

        TGP is the owner and operator of an underground high-pressure pipeline that

transports natural gas. (Dkt. Entry 41, ¶ 8.)  This pipeline runs through Defendants' property

in Milford Township, Pike County, Pennsylvania. (Dkt. Entry 59, at 1-2.)  Defendants'

predecessors in title granted to Tennessee Gas Transportation Company, and its

successors and assigns, "an easement and right-of-way for the purpose of laying, constructing, maintaining, operating, altering, repairing, removing, changing the size of and replacing pipe lines for the transportation" of natural gas and other substances that may travel through pipes. (Dkt. Entry 41, ¶ 8.)  TGP succeeded to all rights held by Tennessee Gas Transportation Company. (Id., ¶ 12.)  The right-of-way agreements conferred to TGP all "rights and benefits necessary or convenient for the full enjoyment or use of the right-of-way" and provided Defendants with "the right to fully use and enjoy the said premises subject to the rights, privileges and authority herein granted and conveyed."  (Dkt. Entry 60, Exhibit A; Dkt. Entry 60-2, Exhibit B; Dkt. Entry 60-4, Exhibit C.)

Defendants acquired title to the property encumbered by this pipeline easement, intending to develop residential building lots.  Defendants' development plans required that two separate roads be built over TGP's right-of-way easement. (Dkt. Entry 58, ¶ 10.) Defendants contacted TGP to inform them of the need to cross over the pipelines, and TGP responded in a letter dated November 15, 2004, granting approval for the project, subject to fourteen enumerated conditions ("Approval Letter").  (Dkt. Entry 60-5, Exhibit D.) Defendants do not contest receipt of the Approval Letter.

TGP contends that numerous conditions within the Approval Letter were not complied with before Defendants commenced construction. (Dkt. Entry 62, at 4.)  TGP alleges that Defendants ignored requests to comply with the OneCall System before

2

excavating or digging on or near TGP's right-of-way. (Id. at 6.)  TGP further contends that

Defendants, without complying with the conditions of approval, constructed roadways in

TGP's right-of-way and interfered with the right-of-way by crossing over the pipeline with

heavy equipment.  (Id. at 4; Dkt. Entry 41, ¶ 35.)  Defendants counter that no activities

occurring on or near TGP's right of way have substantially interfered with TGP's use and

enjoyment of the right-of-way. (Dkt. Entry 59, at 6.)

   B. Procedural Background

   A complaint was filed against Dominic Bradlee on November 11, 2005, and an

amended complaint was later filed on December 13, 2005.[1]  (Dkt. Entries 1, 3.)  On May 3,

2006, TGP moved to amend the Amended Complaint to add party defendants. (Dkt. Entry

24.)  This motion was granted (Dkt. Entry 33), and TGP's Second Amended Complaint,

which included Defendants Milford Arcadia, LP, and Milford Arcadia Group, LTD, was filed

on July 6, 2006. (Dkt. Entry 34.)  TGP's Second Amended Complaint seeks remedies in the

form of an injunction and monetary damages. (Id.)  Defendants filed a Motion for Summary

Judgment on April 2, 2007 (Dkt. Entry 51), which Plaintiff opposed in an April 18, 2007,

brief.  (Dkt. Entry 53.)  On October 11, 2007, this Court dismissed Defendant's Motion for

Summary Judgment without prejudice, to be refiled within ten (10) days with a statement of

---

[1]This Court has jurisdiction under 28 U.S.C. § 1332(a) on the basis of diversity of
citizenship.  Pennsylvania law governs this matter.  See Erie R.R. v. Tompkins, 304 U.S. 64
(1938).

3

material facts. (Dkt. Entry 56.)  On October 23, 2007, Defendants re-filed the Motion for

Summary Judgment with the requisite statement of material facts, and Plaintiff opposed the

Motion on November 7, 2007. (Dkt. Entries 57, 62.)

III.   DISCUSSION

   A.  Summary Judgment Standard

   Summary judgment should be granted when "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is

no genuine issue as to any material fact and . . . the moving party is entitled to a judgment

as a matter of law."  Fed. R. Civ. P. 56(c).  A fact is "material" if proof of its existence or

non-existence might affect the outcome of the suit under applicable law.  Anderson v.

Liberty Lobby Inc., 477 U.S. 242, 248 (1986).   "Facts that could alter the outcome are

material facts."  Charlton v. Paramus Bd. of Educ., 25 F.3d 194, 197 (3d Cir. 1994).

"[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party."

Anderson, 477 U.S. at 248.

   Initially, the moving party must show the absence of a genuine issue concerning any

material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  All doubts as to the

existence of a genuine issue of material fact must be resolved against the moving party,

and the entire record must be examined in the light most favorable to the nonmoving party.

White v. Westinghouse Elec. Co., 862 F.2d 56, 59 (3d Cir. 1988).  Once the moving party

has satisfied its burden, the nonmoving party "must present affirmative evidence in order to

defeat a properly supported motion for summary judgment."  Anderson, 477 U.S. at 257.

Mere conclusory allegations or denials taken from the pleadings are insufficient to withstand

a motion for summary judgment once the moving party has presented evidentiary materials.

Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990).  Rule 56 requires

the entry of summary judgment if there was adequate time for discovery and a party "fails to

make a showing sufficient to establish the existence of an element essential to that party's

case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at

322.

    B. Bradlee Affidavit

        In support for the assertion that there is no material issue of fact, Defendants include

an affidavit from Dominic Bradlee ("Affidavit").  Plaintiff contends that Defendant's Motion

improperly relies on the Affidavit because it is not signed or sworn to by Bradlee under

penalty of perjury.  Under the requirements of Federal Rule of Civil Procedure 56(e) an

unsworn statement should not be relied upon in a motion for summary judgment.  Adickes

v. S.H. Kress & Co., 398 U.S. 144, 158 n.17 (1970); Fed. R. Civ. Pro. 56(e).

        The Affidavit commences with the language, "Dominic Bradlee, being first duly sworn

according [to] law, deposes and says as follows, to wit."  (Dkt. Entry 57, at 4.)  The Affidavit

then lays out ten (10) statements that Bradlee attests to and ends with a signature line,

signed, "/s/ Dominic Bradlee." (Id., at 4 - 6.)  The Affidavit does not include any language in

which Bradlee declares that he is making these statements under penalty of perjury,

although does state he has been "duly sworn." (Id. at 4.)  Since the Affidavit has been "duly

sworn" it may be used to support Defendants' Summary Judgment Motion.  See Adickes,

398 U.S. at 158 n.17.

       The Affidavit, however, contradicts statements made by Bradlee in his Deposition.

The excavations at issue occurred between February and May of 2005, with a complaint

being filed by Plaintiff on November 9, 2005.  (Dkt. Entry 1.)  The Affidavit states that

Defendants contacted the Pennsylvania One-Call System regarding the excavation on

February 8, and March 24, 2006, almost three months after the complaint was filed and

almost a year after the crossings were completed.  (Dkt. Entry 57, ¶ ¶ 4 - 5.)  Bradlee also

asserts that "Defendants have furnished all work and materials necessary to increase the

depth of the pipelines in the areas of crossings . . . ." (Id., ¶ 6.)  This statement is in sharp

contrast to Bradlee's deposition, at which he stated he was not obligated to pay for costs

associated with the first and second crossing.  (Dk. Entry 62-3, at 68:14 - 69:16.)  The

Affidavit also states that "no digging at either intersection occurred."  (Dkt. Entry 57, ¶ 8.)

While at his deposition, Bradlee stated that the drainage ditch on intersection two was made

"with an excavator." (Dk. Entry 62-3, at 64:21 - 65:13.)

A conflict between a witness' affidavit and his deposition testimony is not grounds for excluding the statements in the affidavit; however, "the testimony in the deposition will be treated as more reliable than the statements in the affidavit." United States v. Johns-Manville Corp., 259 F. Supp. 440, 456 (E.D. Pa. 1966) (citing 6 Moore's Federal Practice, ¶ 56.22(1)). "When a party does not explain the contradiction between a subsequent affidavit and a prior deposition, it is appropriate for the district court to disregard the subsequent affidavit . . . ." Jiminez v. All Am. Rathskeller, Inc., 503 F.3d 247, 253 (3d Cir. 2007) (citing Hackman v. Valley Fair, 932 F.2d 239, 241 (3d Cir. 1991)). Since there are inconsistencies between the Affidavit and Bradlee's deposition, this Court will treat the deposition testimony as more reliable than the Affidavit.  See Johns-Manville, Corp., 259 F. Supp. at 456.

C. The Right-of-Way Agreements

TGP and Defendants are in agreement that a valid easement created a right-of-way through Defendants' property.  (Dkt. Entry 62, at 1; Dkt. Entry 57, ¶ 3.)  Although there is no disagreement regarding the easement's existence, the parties do disagree as to the rights and responsibilities created by the easement.

A right-of-way is a type of easement; to ascertain the parameters of an easement the court should determine the "intention of the parties ascertained from the language of the instrument." Merrill v. Mfrs. Light & Heat, 185 A.2d 573, 575 (Pa. 1962).  When an easement is created by an express grant, each parties' liabilities and rights are "determined

by the terms of the agreements, and each has a right to insist that the terms of the

agreement be complied with." Minard Run Oil Co. v. Pennzoil Co., 214 A.2d 234, 235-36

(Pa. 1965).  The terms of the easement conveyance will control unless the language of the

agreement is ambiguous.  Columbia Gas Transmission Co. v. Savage, 863 F. Supp. 198,

201 (M.D. Pa. 1994) (citing Merrill, 185 A.2d 573).  In the case of ambiguity, the court

should construe those terms in favor of the grantee.  Id.

> Each of the Right-of-Way Agreements ("Agreements") states:

> Grantor does hereby grant, bargain, sell and convey unto Grantee all right,
> privilege and authority for the purpose of laying constructing, maintaining,
> operating, altering, repairing, removing, changing the size of and replacing
> pipe lines . . . for the transportation of oil, gas, petroleum products or any
> other liquids, gases or substances which can be transported through pipe
> lines . . . .

(Dkt. Entry 60, Exhibit A; Dkt. Entry 60-2, Exhibit B; Dkt. Entry 60-4, Exhibit C.)  The

Agreements provide that the grantee, TGP, "shall have all other rights and benefits

necessary or convenient for the full enjoyment or use of the rights herein granted, including,

but without limiting the same to, the free right of ingress and egress over and across said

lands."  (Dkt. Entry 60, Exhibit A; Dkt. Entry 60-2, Exhibit B; Dkt. Entry 60-4, Exhibit C.)

Although TGP was granted a right-of-way, Defendants, the grantors, retained the right to

"fully use and enjoy the said premises subject to the rights, privileges and authority herein

granted and conveyed . . . ."  (Dkt. Entry 60, Exhibit A; Dkt. Entry 60-2, Exhibit B; Dkt. Entry

60-4, Exhibit C.)  The Agreements clearly give TGP "all other rights and benefits necessary

8

or convenient" to fully use and enjoy the right-of-way easement, while Defendants retained the right to "fully use and enjoy the said premises subject to" TGP's right to fully use and enjoy the easement.  (See Dkt. Entry 60, Exhibit A; Dkt. Entry 60-2, Exhibit B; Dkt. Entry 60-4, Exhibit C.)

The Agreements are neither ambiguous nor confusing, and thus the terms of the Agreements are controlling in this matter.  See Columbia Gas Transmission Co., 863 F. Supp. at 201.  Defendants' right to retain full use of the property is "subject to" Plaintiff's right to fully use and enjoy the rights granted in the Agreements.  (See Dkt. Entry 60, Exhibit A; Dkt. Entry 60-2, Exhibit B; Dkt. Entry 60-4, Exhibit C).

D. Unreasonable Interference

A grantor, the servient tenant, may use the property as he or she chooses, but "may not interfere with the proper and reasonable use" by the grantee of the dominant right. Taylor v. Heffner, 58 A.2d 450, 454 (Pa. 1948).  Whether a servient landowner's acts constitute an unreasonable interference with a right-of-way or easement is a question of fact.  See Percy A. Brown & Co. v. Raub, 54 A.2d 35, 46 (Pa. 1947) ("No definite rule can be stated as to what may be considered a proper and reasonable use as distinguished from an unreasonable and improper use.  The question is usually left to the jury or the trial court as one of fact.");  Siedler v. Waln, 109 A. 643, 645 (Pa. 1920) (finding that the question of whether the use of an easement is an unreasonable or improper one, are questions to be

"'left to the determination of a jury or the trial court, as questions of fact'").

Defendants rely almost exclusively on Minard Run Oil Co. v. Pennzoil, Co., claiming that the crossing of a right-of-way does not interfere with the purpose of an easement.  214 A.2d 234.  Defendants claim that Minard's language that a property owner who sells pipeline easements is not surrendering "its right to the enjoyment of the rest of the property" provides support for Defendants' assertions that they are able to use the property as they deem appropriate. (Dkt. Entry 59, at 4.)  Minard's language, however, is modified by the statement that "'[t]he possessor of land subject to an easement created by the conveyance is privileged to make such uses of the servient tenement as are not inconsistent with the provisions of the creating conveyance.'"  Minard, 214 A.2d at 235 (citing Restatement, Law of Property § 486).  Defendants' assertion that a land-owner may not "be prevented from working his land so as to derive the greatest profit therefrom," is true, so long as the land-owner's use "is consistent with or not calculated to interfere with the exercise of the easement." (Dkt. Entry 59, at 4; Minard, 214 A.2d at 235.)  The question thus clearly becomes what activities interfere with or are inconsistent with the exercise of the easement.[2]  See Minard, 214 A.2d at 235.

_____

[2] Defendants additionally rely on Minard to support the denial of TGP's reimbursement claim. (Dkt. Entry 59, at 5.)  This reliance is misplaced.  Minard held that the lowering of a pipeline in no way increased the profits or facilitated the discharge of the easement holder's business of transporting substances through pipes.  The court found that
(continued...)

The essential issue here is whether Defendants' actions substantially or unreasonably interfered with TGP's right-of-way easement.  In answering that question, the identification of the exact nature of Defendants actions on and around the right-of-way and the establishment of whether these actions were consented to by TGP are material facts. See Percy A. Brown & Co., 54 A.2d at 46; Siedler, 109 A. at 645.

TGP contends that conditional approval was given to Defendants to begin construction.  (Dkt. Entry 60-5.)  The Approval Letter included fourteen enumerated conditions that were required for approval, and a signature line that Defendants were to sign and date, notifying TGP that they "Accepted and Agreed" to the conditions.  Defendants contend that "all work performed in the right-of-way was performed in accordance with the plans therefor agreed upon by Plaintiff pursuant to its approval letter dated November 15, 2004 . . . ." (Dkt. Entry 57, Bradlee Affidavit, ¶ 10.)  Plaintiff disagrees.

Condition number one of the Approval Letter stipulates that "[p]rior to any planned excavation or heavy equipment activity on or near our [TGP's] easement, you [Defendants] must contact Mr. Ron Miller, Tennessee Gas Pipeline Company . . . .  A Tennessee

---

[2](...continued)
it should be the grantor's obligation to pay for the changes it desired.  Minard, 214 A.2d at 235.  Here, Defendants seek a change in the status quo by creating crossings over Plaintiff's right-of-way.  Thus, reliance by Defendants on Minard is misplaced, as the Minard holding is contrary to Defendant's position that they are not responsible for reimbursement for the lowering of the pipeline.

representative must standby when work is occurring on or near our easement area." (Dkt. Entry 60-5, ¶ 1.)  Plaintiffs assert that Defendants violated the heavy equipment condition at least twice during construction.  "On or about May 15, 2005, Defendants proceeded to again encroach upon TGP's right-of-way by crossing over the pipeline at a second location in a manner that threatened the integrity of the pipeline in violation of the Agreement." (Dkt. Entry 62-2, McDermott Affidavit, ¶ 10.)  Defendants contend that they are entitled to freely cross over the easement without any restrictions or limitations. (Dkt. 62-3, Bradlee Deposition, at 16:10.)  Bradlee admits that prior to the placing of fill around the pipelines, Defendants had been crossing the pipelines with equipment, that TGP personnel was not on site at the second crossing when the fill was placed, and that Defendants had crossed over the pipeline with equipment even after having been contacted by TGP.  (Dkt. Entry 62-3, Bradlee Deposition, at 25:7, 57:25, 61:8.)  Salvatore Caiazza also admits that other than during the design stage, Plaintiff was "not involved in any sort of site inspection during the construction period regarding, specifically, the gas pipeline crossing." (Dkt. 62-5, Caiazza Deposition, at 21:15 - 21:22.)

Defendants also contend that no digging occurred at either intersection.  (Dkt. Entry 57, Bradlee Affidavit, ¶ 8.)  In Bradlee's deposition, however, Bradlee admits that the drainage ditches at crossing number two were created with an excavator after the crossing was made.  (Dkt. Entry 62-3, Bradlee Deposition, at 64:24 - 65:13.)  Additionally,

Defendants admit that TGP was not notified prior to the excavation.  (Dkt. Entry 62-3, Bradlee Deposition, at 65:8; see Dkt. Entry 62-5, Caiazza Deposition, 24:14 (Salvatore Caiazza, a consultant to Defendants, admitted that he was unaware of whether Ron Miller from TGP was contacted before "excavation or heavy equipment activity" occurred near the easement.); see Dkt. Entry 62-2, McDermott Affidavit, ¶ 11 ("Defendants also excavated a trench across TGP's right-of-way and over the pipeline.").)

The second condition of the Approval Letter stipulates that Defendants "must notify PA One Call System . . . prior to any excavation or grading activity within the easement area."  (Dkt. Entry 60-5, ¶ 2.)  Caiazza believes that PA One Calls were made, but admits that he did not make them and has no first-hand knowledge regarding who made them. (Dkt. Entry 62-5, 24:14 - 24:21.)  Andreas J. McDermott, Principal Property Rights Specialist at TGP, asserts that "Defendants ignored TGP's request to comply with the One Call System before excavating or digging on or near TGP's right-of-way and pipeline," and that "despite numerous requests from TGP, Defendants ignored TGP's request to refrain from excavation and interference within TGP's right-of-way." (Dkt. Entry 62-2, McDermott Affidavit, ¶ 8.)  Email exchanges between James Lance and Ronald Miller of TGP, indicate that a call was made to the PA One Call System on February 18, 2005, with latitudes and longitudes for Defendants' proposed crossings, but there appear to be discrepancies

13

regarding both where the crossings were located and when the excavation occurred.[3]

Condition six of the Approval Letter requires Defendants to "excavate our [TGP's]

pipeline the entire length of [the] proposed road crossings and driveways in order to check

bedding and coating." (Dkt. Entry 60-5, ¶ 6.)  In addition, TGP required that all pipeline

excavation "be done under our [TGP's] direct supervision and by a contractor who meets

our requirements.  If new bedding is required within your project, it will be at your cost and

expense." Id.  Defendants contend that "all work performed in the right-of-way was

performed in accordance with the plans therefor agreed upon by Plaintiff pursuant to its

approval letter . . . ." (Dkt. Entry 57, Bradlee Affidavit, ¶ 10; see Dkt. Entry 58, Statement of

Material Facts ¶ 10.)  Yet at the same time, Defendants admit that TGP was not at the site

of the second crossing when fill was laid and asserts that Defendants are not responsible

for paying for the costs associated with coating and providing flowable fill. (Dkt. Entry 62-3,

Bradlee Affidavit, at 57:22, 68:14 - 69:6.)

The seventh condition of the Approval Letter requires that TGP's safety guidelines

be followed and that if the requirements are not met, that TGP reserves "the right to

complete this project" with their own contractor and "all related costs will be billed back to"

---

[3] The diagram provided by TGP show the pipeline, and at the point of the first
crossing, identifies that the crossing was found completed on February 18, 2005, and that
the "Actual Area of Crossing" was excavated on February 22, 2005.  Additionally, TGP's
diagram seems to indicate that the One Call latitude and longitude of the proposed
crossings were not at the same location as the actual crossings.

14

Defendants. (Dkt. Entry 60-5; ¶ 7.)  Plaintiff contends that "Defendants did not furnish all work and/or materials necessary to increase the depth of the pipelines in the areas of the crossings, to inspect the pipelines or to construct the crossing over the pipeline." (Dkt. Entry 62-2; McDermott Affidavit, ¶ 15.)  Bradlee admits that Defendants did not pay for the costs associated with sand blasting the pipeline, with coating the pipelines, or with flowable fill, in part because he contends that he had no obligation to pay these costs.  (Dkt Entry 62-3, Bradlee Deposition, at 68:14 - 69:6.)

Lastly, the thirteenth condition requires that the conditional letter be "accepted and agreed to prior to the commencement of construction within the easement area." (Dkt. Entry 60-5, ¶ 13.)  Caiazza does not recall, nor does he have any knowledge of anyone else, ever signing the conditional approval letter and returning the agreement, as required on the last page with the "agreed to on this date" line. (Dkt. Entry 62-5, Caiazza Deposition, at 22:15 - 22:21.)  Again however, Defendants assert that  "all work performed in the right-of-way was performed in accordance with the plans therefor agreed upon by Plaintiff pursuant to its approval letter . . . ." (Dkt. Entry 57, Bradlee Affidavit, ¶ 10; see Dkt. Entry 58, Statement of Material Facts ¶ 10.)

Clearly, there are genuine issues of material fact as to what occurred on or near TGP's right-of-way and whether Defendants interfered with TGP's easement.  Whether Defendants' acts constituted an unreasonable interference with TGP's right-of-way is a

question of fact to be left to a jury.  See Percy A. Brown & Co., 54 A.2d at 46; Taylor, 58 A.2d at 454; Siedler, 109 A. at 645.

III.    Conclusion

For the reasons stated, Defendants' Motion for Summary Judgment will be denied. An appropriate Order follows.

s/ Thomas I. Vanaskie
Thomas I. Vanaskie
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


TENNESSEE GAS PIPELINE CO.    :
          Plaintiff      :
                       :
    VS.                   :         3:CV-05-2328
                       :         (JUDGE VANASKIE)
DOMINIC BRADLEE, MILFORD    :
ARCADIA, LP, MILFORD ARCADIA    :
GROUP, LTD             :
          Defendants    :
                       :

ORDER

NOW, THIS 29th DAY OF SEPTEMBER, 2008, for the reasons set forth in the

foregoing memorandum, IT IS HEREBY ORDERED THAT:

1. Defendants' Motion for Summary Judgment (Dkt. Entry 57) is DENIED.

2. A telephonic scheduling conference shall be held on October 21, 2008, at 3:30

p.m.  Counsel for Plaintiff is responsible placing the call to (570) 207-5720, and all parties

should be ready to proceed before the undersigned is contacted.

s/ Thomas I. Vanaskie
Thomas I. Vanaskie
United States District Judge